GEORGE A. OHL, JR., respondent.

*v.*

EDWARD W. WALDER et ux., appellants.

[Decided October 27th, 1926.]

On appeal from the court of chancery, where the following opinion was rendered by Vice-Chancellor Berry, orally.

"This bill is filed for the specific performance of an alleged agreement for the sale of land located at Eatontown, New Jersey. It asks that the alleged agreement be construed, and that the description of the land which it is alleged the complainant agreed to purchase, and the defendant agreed to sell, as contained in a deed executed and delivered by the vendor

to the vendee, subsequent to the date of the contract, be re-formed, in order that it may conform to the agreement or understanding which is sought to be enforced.

"On September 6th, 1924, the defendant agreed to sell, and the complainant agreed to buy, a certain piece of land at Eatontown, New Jersey, for the sum of eight hundred and fifty dollars ($850). The complainant paid to the defendant the full purchase price of the land on that day and received in return a receipt for the money so paid in the following terms:

> " 'Eatontown, N. J.
> Sept. 6/24
> Received from Geo. A. Ohl, Jr., eight hundred and fifty dollars, the receipt of which is hereby acknowledged for plot of ground south of the Braun and Applegate property seventy feet front more or less and westward to trees or line fence of Mrs. Jas. Steen's property—eighteen inches from north side of Walder Garage, elec-tric light and gas connections to be allowed. Property to be free and clear.
> Witness: A. Augusta Ohl.        Signed Edward W. Walder.'

"Immediately after this transaction the complainant ar-ranged for the erection of a house on the land so purchased, and operations were begun under his contract almost im-mediately. His contract for the erection of the house was made within a few days after this agreement was entered into. On or about September 15th the defendant delivered to the complainant's sister a deed which purported to con-vey the lot which the complainant had agreed to buy. A few days later the sister delivered this deed to the complainant, whereupon he discovered that it did not contain a description of the property which he alleges he agreed to purchase. He, therefore, sent the deed back to the defendant by his sister, with the request that a new deed, conveying the property which he alleged he was entitled to have, be executed and delivered. The defendant refused to accept the deed and insisted that the deed as prepared completely described the lot which he sold to the complainant.

"The deed, as delivered, described a lot seventy feet in front on Burne's lane, and extending westwardly to property of

one Steen.   The defendant contends that this is the lot which he sold, and the complainant contends that under the agreement he was entitled to receive a lot with a frontage extending from the Braun line on the north to a point on a line eighteen inches northwardly, from the north line of the defendant's garage, and if this contention is correct, the complainant would be entitled to receive a conveyance of a lot seventy-seven and seven one-hundredths feet (77.7) on Burne's lane and extending westwardly between practically parallel lines of that width, to the Steen line.

"That there was a contract entered into between the parties is not disputed.   And it is admitted that the paper-writing, copy of which has been recited, is that contract, and that the deed delivered by the defendant, and which was duly executed and acknowledged by him and his wife, was executed and delivered in performance of this agreement.

"The whole question at issue here is whether the complainant is entitled to a lot seventy-seven and seven one-hundredths feet (77.7) in front, or a lot only seventy feet in front, on Burne's lane.   This involves a construction of the language of the receipt, which was given by the defendant to the complainant.   This receipt specifies that the plot of ground lies south of the Braun and Applegate property, that it has a frontage of seventy feet, more or less, and that it extends westward to the line fence of the Steen property.   Up to this point there is no dispute between the parties as to the description of the property.   The receipt then indicates that the southerly line of the property is to be on a line eighteen inches from the north side of the Walder garage, that is, the defendant's garage.   The complainant contends that after the payment of the money and the delivery of this receipt, the parties visited the lot which was the subject of the sale, and that there the defendant pointed out to him the respective property lines, and that with respect to the southerly line the defendant took a stand on Burne's lane, in front of the property, about three feet northwardly from the north line of the defendant's garage, and there indicated by a wave of his hand that the southerly line of the property which he

had sold was on a line eighteen inches north from the north line of the defendant's garage. This statement by the complainant is not denied by the defendant.

"Subsequently, after the controversy between these parties had arisen, some correspondence passed between them, and in one of the defendant's letters he stated that his agreement was to convey a lot between parallel lines, but insisted that the southerly line was intended to be not more than seventy feet from the northerly line of the lot to be conveyed.

"It seems to me perfectly clear, therefore, that the intention of the parties was to convey a lot with a frontage on Burne's lane of seventy feet, more or less, the southerly line of which was to be eighteen inches northerly from the north line of the defendant's garage. I am forced to this conclusion not only by the testimony and exhibits in this case, but also because this construction, to my mind, is the only construction which can be placed upon the receipt which was given by the defendant at the time the purchase-money was paid over to him. The receipt described the property as having a frontage of seventy feet, more or less. If it had been intended that seventy feet only was to have been conveyed, then the words 'more or less' would have no place in the receipt. There would have been no reason for including those words therein. This, to my mind, indicates that the front line of the property which the parties had in mind to sell and buy was indefinite in width, but that they had in mind a certain plot, the front dimensions of which might be subject to a few feet variation, either way, and that that was the reason for using the words 'more or less.'

"I am also forced to this conclusion by the use of the words 'eighteen inches from north side of Walder garage.' If this language does not mean exactly what it says, then I am unable to place any interpretation upon it. A line eighteen inches from the north side of the Walder garage does not mean a line nine and two-tenths feet distant northerly therefrom. If it had been intended that this line should run along the northerly line of the garage nine and two-tenths feet distant therefrom, then the agreement could very easily have said so,

but it is particularly significant to my mind that the receipt says 'eighteen inches from the north side of the Walder garage.' That means, to my mind, eighteen inches distant from every point along the north side of the garage, and this, I think, is what was intended by the parties at the time the agreement of sale was made and at the time this receipt was signed. If it was not so intended, this court cannot now aid the parties, because, to construe the contract to mean anything else but what I have said it means, would be to make an entirely new contract for the parties.

"In view of what I have here said, I will advise a decree in favor of the complainant, in accordance with the prayer of the bill."

*Messrs. Wilson & Smock,* for the respondent.

*Mr. Alston Beekman,* for the appellants.

PER CURIAM.

The judgment under review herein should be affirmed, for the reasons expressed in the opinion of the court below.

*For affirmance*—THE CHIEF-JUSTICE, TRENCHARD, PARKER, MINTURN, KALISCH, BLACK, KATZENBACH, CAMPBELL, LLOYD, WHITE, GARDNER, VAN BUSKIRK, MCGLENNON, KAYS, HETFIELD, JJ.   15.

*For reversal*—None.